# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOEY R. CAMERON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-13-06-SPS |

## OPINION AND ORDER

The claimant Joey R. Cameron requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---
[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on March 24, 1958, and was fifty-three years old at the administrative hearing (Tr. 77, 225). He completed the ninth grade, and has worked as a pipeliner and construction worker (Tr. 24, 134). The claimant alleges he has been unable to work since June 12, 2009, due to problems with his back and legs (Tr. 133).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on March 11, 2010. His applications were denied. ALJ Michael A. Kirkpatrick held an administrative hearing and determined that the claimant was not disabled in a written decision dated July 8, 2011 (Tr. 16-25). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, he could lift/carry ten pounds frequently and twenty pounds occasionally, and sit/stand/walk six hours in an eight-hour workday, but could climb and stoop occasionally and perform

simple, unskilled tasks and detailed, semi-skilled tasks, but not complex, skilled tasks (Tr. 20). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there were other jobs he could perform, *i. e.*, cashier II, bench assembler, and rental clerk (Tr. 25).

**Review**

The claimant contends that the ALJ erred: (i) by failing to order consultative physical and mental examinations and thereby fully develop the record, and (ii) by failing to base his finding that the claimant could perform light work on substantial evidence. The Court finds that the ALJ did fail to fully develop the record, and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that that the claimant's somatoform disorder, substance addiction disorder, moderate medial tibiotalar degenerative joint disease, and degenerative disc disease were severe impairments (Tr. 18). The relevant medical evidence indicates that the claimant complained of low back and ankle pain, and X-rays revealed degenerative disc disease without fracture, dislocation, or subluxation (Tr. 159-161, 167, 206). Further X-rays in August 2010 revealed moderate medial tibiotalar degenerative joint disease in his left ankle (Tr. 212). At an exam on March 16, 2011, notes reflect that the claimant "moves very slowly to get onto the table," and that he was anxious due to the recent death of his father (Tr. 216).

On April 17, 2010, Dr. Beth Jeffries conducted a brief mental status examination of the clamant (Tr. 170-173). She noted a number of concerns regarding the claimant, stating that "he seemed insincere in his presentation and he seemed to [be] perhaps

exacerbating or exaggerating his pain symptoms" (Tr. 170). Dr. Jeffries stated that he appeared to be intoxicated due to either pain medications or marijuana usage, and became more tired and disengaged as the exam went on (Tr. 171). She noted he was not able to interpret common proverbs, demonstrate concrete thought, his memory and concentration were difficult to ascertain but appeared to be mildly impaired, and also demonstrated mildly impaired insight and judgment (Tr. 172-173). Dr. Jeffries found that the claimant appeared to meet the criteria for a pain disorder with psychological and general medical factors, and found it likely he was abusing marijuana or pain medications (Tr. 173). She stated: "This examination was very brief, and although he adamantly denied being intoxicated I think that the results of this exam may not be an accurate reflection of his abilities, given my belief that he was not clear thinking in this exam. It is *strongly recommended he be given a more thorough psychological testing* . . . but it is certainly recommended that a personality disorder and some type of substance use questionnaire be inserted in that battery of testing" (Tr. 173) [emphasis added].

In his written opinion, the ALJ summarized the claimant's hearing testimony and some of the medical evidence, including Dr. Jeffries' comment that her report might not accurately reflect the claimant's abilities, with one glaring omission: the ALJ neglected to mention the "strong recommendation" by Dr. Jeffries that the claimant undergo further consultative examination. Significantly, the ALJ highlighted Dr. Jeffries' suspicion that the claimant had used pain medications (and possibly marijuana) as supportive of his own conclusion that the claimant was not credible (Tr. 22-23).

An ALJ has broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. A consultative examination also may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. *Id*. at 1166. But an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record. *See Hawkins*, 113 F.3d at 1168. In this case, counsel *requested in writing* a physical and consultative examination, along with bilateral knee X-rays, prior to the administrative hearing (Tr. 147). And although claimant's counsel did not request a consultative *mental* examination in writing or at the hearing, Dr. Jeffries *did* make it clear that she felt further examination was important. Such an examination would have been helpful in this case, because in its absence the ALJ was required to rely solely on the admittedly incomplete opinion of a *reviewing* state agency physician. *See, e.g.*, *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987) ("[R]eports of reviewing physicians are . . . accorded less weight than those of examining physicians."). The ALJ's discretion is not boundless, and under the circumstances in this case, the ALJ should at least have explained why he was refusing to order a consultative examination strongly recommended by a physician whose opinions he otherwise endorsed.

Because the ALJ failed to explain why he refused to order an otherwise highly-called-for consultative mental status examination, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further consideration. If as a result of such consideration there are changes to the claimant's RFC, the ALJ should re-determine the work the claimant can perform, if any, and ultimately whether he is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 31st day of March, 2014.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma